## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUSAN FINGER, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT FOR VIOLATIONS** |
| | ) | **OF THE FEDERAL SECURITIES** |
| | ) | **LAWS** |
| VONAGE HOLDINGS CORP., HAMID | ) | |
| AKHAVAN, JEFFREY A. CITRON, JAN | ) | JURY TRIAL DEMANDED |
| HAUSER, PRISCILLA HUNG, CAROLYN | ) | |
| KATZ, MICHAEL J. MCCONNELL, RORY | ) | |
| READ, JOHN J. ROBERTS, TIEN TZUO, and | ) | |
| STEPHEN M. WARD, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Susan Finger ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Vonage Holdings, Inc. ("Vonage" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") will acquire the Company through Ericsson's subsidiary Ericsson Muon Holding Inc. ("Merger Sub")  (the "Proposed Transaction").[1]

---

[1] Non-party Ericsson is an entity organized under the laws of Sweden, with its principal executive offices located at Torshamnsgatan 21, Kista SE-164 83, Stockholm, Sweden.  Ericsson and its subsidiaries have approximately 100,000 employees and serves customers in more than 180 countries. Non-party Merger Sub is a Delaware corporation and an indirect wholly-owned subsidiary of Ericsson.

2.      On November 22, 2021 Vonage announced, *inter alia,* its entry into an Agreement and Plan of Merger dated the same day (the "Merger Agreement").  The Merger Agreement provides that Company stockholders will receive $21.00 in cash for each share of Vonage stock they own.[2]

3.      On January 10, 2022, the Company filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Vonage stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who

---

[2] The approximate value of the Proposed Transaction is $6.2 billion.

has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (a) the Company maintains and operates two data center locations in this District; (b) one or more of the defendants either resides in or maintains executive offices in this District; and (c) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a stockholder of Vonage.

10.     Defendant Vonage is a Delaware corporation with its principal executive offices located at 23 Main Street, Holmdel, New Jersey 07733.  The Company is a global cloud communications leader.  Vonage's common stock trades on the New York Stock Exchange under the ticker symbol "VG."

11.     Defendant Hamid Akhavan ("Akhavan") is and has been a director of the Company since December 2016.

12.     Defendant Jeffrey A. Citron ("Citron") has been Chairman of the Board and a director of the Company since January 2001.

13.     Defendant Jan Hauser ("Hauser") is and has been a director of the Company since September 2019.

14.     Defendant Priscilla Hung ("Hung") is and has been a director of the Company since August 2019.

15.     Defendant Carolyn Katz ("Katz") is and has been a director of the Company since January 2014.

16.     Defendant Michael J. McConnell ("McConnell") is and has been a director of the Company since March 2019.

17.     Defendant Rory Read ("Read") has been Chief Executive Officer ("CEO") and a director of the Company since July 2020.

18.     Defendant John J. Roberts ("Roberts") has been Lead Independent Director since February 2015, and a director of the Company since August 2004.

19.     Defendant Tien Tzuo ("Tzuo") is and has been a director of the Company since July 2020.

20.     Defendant Stephen M. Ward, Jr. ("Ward") is and has been a director of the Company since June 23, 2021.

21.     Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

22.     On November 22, 2021, Vonage announced in relevant part:

HOLMDEL, N.J., Nov. 22, 2021 -- Ericsson (NASDAQ: ERIC) has entered into an agreement to acquire Vonage (NASDAQ: VG) for USD 21 per share.  This represents a total acquisition price of approximately USD 6.2 billion (Enterprise Value).

The merger agreement was approved unanimously by the Board of Vonage.  The transaction builds upon Ericsson's stated intent to expand globally in wireless enterprise, offering existing customers an increased share of a market valued at USD 700 billion by 2030.

Börje Ekholm, President and CEO of Ericsson, says: "The core of our strategy is to build leading mobile networks through technology leadership.  This provides the foundation to build an enterprise business.  The acquisition of Vonage is the next step in delivering on that strategic priority.  Vonage gives us a platform to help our customers monetize the investments in the network, benefitting developers and businesses.  Imagine putting the power and capabilities of 5G, the biggest global innovation platform, at the fingertips of developers.  Then back it with Vonage's advanced capabilities, in a world of 8 billion connected devices.  Today we are making that possible."

"Today Network APIs are an established market for messaging, voice and video, but with a significant potential to capitalize on new 4G and 5G capabilities. Vonage's strong developer ecosystem will get access to 4G and 5G network APIs, exposed in a simple and globally unified way. This will allow them to develop new innovative global offerings. Communication Service Providers will be able to better monetize their investments in network infrastructure by creating new API driven revenues. Finally, businesses will benefit from the 5G performance, impacting operational performance, and share in new value coming from applications on top of the network."

Rory Read, CEO of Vonage, says: "Ericsson and Vonage have a shared ambition to accelerate our long-term growth strategy. The convergence of the internet, mobility, the cloud and powerful 5G networks are forming the digital transformation and intelligent communications wave, which is driving a secular change in the way businesses operate. The combination of our two companies offers exciting opportunities for customers, partners, developers and team members to capture this next wave."

"We believe joining Ericsson is in the best interests of our shareholders and is a testament to Vonage's leadership position in business cloud communications, our innovative product portfolio, and outstanding team."

For Ericsson, the acquisition builds on the success of the integration of Cradlepoint in September 2020. Cradlepoint has continued to develop strongly under Ericsson's ownership.

Vonage and the Vonage Communications Platform (VCP)

Vonage, a global provider of cloud-based communications, has a strong track record of growth and margin evolution. Sales were USD 1.4 billion in the 12-month period to 30 September 2021, and over the same period, Vonage delivered an adjusted EBITDA margin of 14% and free cash flow of USD 109 million.

The cloud-based Vonage Communications Platform (VCP) serves over 120,000 customers and more than one million registered developers globally. The API (Application Programming Interface) platform within VCP allows developers to embed high quality communications - including messaging, voice and video - into applications and products, without back-end infrastructure or interfaces. Vonage also provides Unified Communications as a Service (UCaaS) and Contact Center as a Service (CCaaS) solutions as part of the Vonage Communications Platform.

VCP accounts for approximately 80% of Vonage's current revenues and delivered revenue growth in excess of 20% in the three-year period to 2020, with adjusted EBITDA margins moving from -19% in 2018 to break-even in the 12-month period to 30 September 2021. Vonage's management team projects annual growth of over 20% for VCP in the coming years.

Ericsson and Vonage – creating a winning combination

Vonage's presence in the Communication Platform as a Service (CPaaS) segment will provide Ericsson with an opportunity to access a complementary, substantial and high growth segment. With increasing investments in 4G and 5G - and a flourishing ecosystem of new applications and use cases leveraging the power of modern networks - demand from enterprises for programmable networks has been accelerating. CPaaS technologies democratize network access by offering API-enabled communications services. The CPaaS market is expected to reach USD 22 billion by 2025, growing at 30% annually. In addition, Ericsson's global leadership in 5G technology is expected to provide access to the developing space for open network APIs, which is expected to reach at least USD 8 billion by the end of the decade with a strong growth profile. CSP customers will also benefit from monetizing their network investments, optimizing the user experience and stimulating additional growth opportunities with new and advanced global network APIs and access to Vonage's unified communications and contact center solutions.

The combination of Vonage's customer base and developer community and Ericsson's deep network expertise, 26,000 R&D specialists and global reach creates opportunities to accelerate standalone strategies and innovation in the market. This includes accelerating enterprise digitalization and developing advanced APIs made possible by 5G; putting the power of the wireless network and communications at the fingertips of the developer. Such APIs can be applied to help ensure the quality of critical services like telemedicine, immersive virtual education and autonomous vehicles as well as experiential performance benefits in gaming, augmented and extended reality, over wireless.

In the longer term, Ericsson intends to offer value benefits to the full ecosystem – telecom operators, developers, and businesses – by creating a global platform for open network innovation, built on Ericsson and Vonage's complementary solutions.

Overview of the transaction

The acquisition will be conducted by means of a merger agreement through which Ericsson will acquire all of Vonage's outstanding shares at an all-cash price of USD 21 per share. The merger consideration represents a premium of 28% to Vonage's closing share price on 19 November 2021 of USD 16.37 per share, and a premium of 34% to the volume-weighted average share price over the 3 months to 19 November 2021 of USD 15.71 per share.

The acquisition will be financed through Ericsson's existing cash resources, which amounted to SEK 88 billion as of 30 September 2021 on a gross basis, and SEK 56 billion on a net basis as of the same date.

The transaction is expected to deliver near-term revenue synergy opportunities, including white-labelling and cross-selling of the combined product portfolio estimated to contribute USD 0.4 billion by 2025. Ericsson also expects to achieve some cost efficiencies following completion of the transaction.

The transaction is expected to be accretive to EPS (excluding non-cash amortization impacts) and free cash flow before M&A from 2024 onwards.

On completion, Vonage will become a wholly owned subsidiary of Ericsson and will continue to operate under its existing name.  It will be reported as a separate segment in Ericsson accounts.  Vonage is headquartered in Holmdel, New Jersey in the United States with 2,200 employees throughout the United States, EMEA and APAC. Vonage's employees will remain with the company and the Vonage CEO Rory Read will join the Executive Team of Ericsson, reporting to President and CEO, Börje Ekholm.  Read joined Vonage as CEO in July 2020.  With more than three decades' global technology industry experience, Read was previously Chief Operating Executive for Dell Technologies and before that, CEO of Advanced Micro Devices (AMD).

Ericsson remains fully committed to previously communicated financial targets, including long-term EBITA margins of 15-18%; long term FCF before M&A of 9-12% of sales; and a 2022 target EBIT margin of 12-14% for Ericsson Group excluding Vonage.

Completion of the transaction is subject to Vonage shareholder approval, regulatory approvals and other customary conditions and is expected within the first half of 2022.

Additional Details of the Transaction

The Vonage Board of Directors unanimously approved the transaction.  The Board of Directors of Vonage recommends that Vonage shareholders approve the transaction and adopt the merger agreement.

The agreement is a result of a comprehensive review of strategic alternatives to maximize shareholder value.  The Vonage Board of Directors authorized the review of strategic alternatives, which included outreach to a number of potential strategic and financial parties.  Qatalyst Partners is serving as financial advisor and Weil, Gotshal & Manges LLP is serving as legal advisor in connection with the strategic review and transaction.

## The Proxy Statement Contains Material Misstatements or Omissions

23.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Vonage's stockholders.  The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

24.     Specifically, as set forth below, the Proxy Statement fails to provide Company

stockholders with material information or provides them with materially misleading information concerning the financial projections for the Company and the valuation analyses underlying the fairness opinions provided by the Company's financial advisor Qatalyst Partners LP ("Qatalyst").

***Material Omissions Concerning the Company's Financial Forecasts and the Financial Analyses Relied on by the Board***

25.    The Proxy Statement omits material information regarding the financial forecasts for the Company including the line items underlying Vonage's projections for: (a) Gross Profit; (b) Adjusted EBITDA; (c) Non-GAAP Operating Income; (d) Unlevered Free Cash Flow; and (e) Free Cash Flow – Consumer.[3]

26.    The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Qatalyst.

27.    The Proxy Statement describes Qatalyst's fairness opinion and the various underlying valuation analyses. Those descriptions, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding Qatalyst's work. As a result, Vonage stockholders cannot assess what significance to place on Qatalyst's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

28.    With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) quantification of the inputs and assumptions underlying the discount rate range of 6.5% to 11.5%; (b) quantification of Vonage's terminal value; (c) quantification of

---

[3] The Proxy Statement further fails to disclose the "selected financial information" for each of Vonage's API segment and UC and CC segment, utilized by the Company's financial advisor Qatalyst in its *Sum of the Parts Analysis. See* Proxy Statement at 52. Similarly, the Proxy Statement fails to disclose the analyst projections for Vonage as of November 19, 2021 (the "Analyst Projections"), utilized by Qatalyst in connection with the analyses underlying its fairness opinion.

Vonage's fully diluted shares utilized by Qatalyst; and (d) the implied perpetuity growth rates resulting from the analysis.

29.     With respect to Qatalyst's *Sum of the Parts Analysis*, the Proxy Statement fails to disclose: (a) as set forth above, the "selected financial information" for each of Vonage's API segment and UC and CC segment, utilized by Qatalyst in the analysis (*see id.* at 52); (b) the fully-diluted enterprise values and CY2022E Gross Profit multiples for the selected API companies observed by Qatalyst; (c) quantification of the inputs and assumptions underlying the discount rate range of 6.5% to 11.5%; (d) quantification of the terminal value for the consumer segment; (e) Vonage's projected net debt as of September 30, 2021; and (f) quantification of Vonage's fully diluted shares utilized by Qatalyst.

30.     With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (a) Vonage's estimated calendar year 2022 revenue based on each of the Analyst Projections; and (b) quantification of Vonage's fully diluted shares utilized by Qatalyst.

31.     With respect to Qatalyst's *Selected Transactions Analysis*, the Proxy Statement fails to disclose a quantification of Vonage's fully diluted shares utilized by Qatalyst.

32.     Without such undisclosed information, Vonage stockholders cannot evaluate for themselves whether the financial analyses performed by Qatalyst were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.   In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Qatalyst's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

33.     The omission of this information renders the statements in the "Opinion of Qatalyst Partners LP" and "Certain Financial Projections Utilized in Connection with the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

34.     Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Vonage stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

36.     Plaintiff repeats all previous allegations as if set forth in full.

37.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

38.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections and

the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Financial Advisors.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39.      The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

40.      By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

41.      Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

42.      Plaintiff repeats all previous allegations as if set forth in full.

43.      The Individual Defendants acted as controlling persons of Vonage within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Vonage, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

44.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Vonage's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Vonage, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any

vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Vonage stockholders;

        B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

        C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

        D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

        E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  January 31, 2022              **LONG LAW, LLC**

                          By   */s/ Brian D. Long*

                                Brian D. Long (#4347)
                                3828 Kennett Pike, Suite 208
                                Wilmington, DE 19807
                                Telephone: (302) 729-9100
                                Email: BDLong@longlawde.com